**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **CRIMINAL ACTION NO.** |
| v. ) | **1:17cr317-MHT** |
| ) | **(WO)** |
| **JOHN STEVEN GRIFFIN** ) | |

OPINION AND ORDER

Defendant John Steven Griffin is before the court on an amended petition for revocation. The petition states that Griffin was discharged from the inpatient substance-abuse treatment program at Herring Houses of Dothan, for a physical altercation with his employer; tested positive for methamphetamine, preventing for a time his transfer to inpatient treatment at Fellowship House; failed to appear before this court at a scheduled revocation hearing; was subsequently placed in inpatient treatment at The Fellowship House in Birmingham; two months later, was discharged from Fellowship House due to a positive drug screen for Suboxone; after his discharge from Fellowship House,

failed to report to the Montgomery Probation Office; and then again tested positive for methamphetamine. At a hearing on March 8, 2018, Griffin pled guilty to all six violations in the amended petition. The court is now faced with the question of sentencing a defendant whom all parties recognize is a drug addict, who appears to potentially possess an underlying or co-occurring mental disorder, and who has continued to cycle between substance abuse and petitions to revoke his supervised release, despite extensive attempts at treatment.

This court has held that where there is a reasonable basis to believe that a defendant's mental disease or defect--including a substance-abuse disorder--contributed to the conduct underlying his or her conviction, the court should order a mental-health evaluation. *See United States v. Kimbrough*, No. 2:07cr260, 2018 WL 989541 (M.D. Ala. Feb. 20, 2018); *see also United States v. Mosley*, 277 F. Supp. 3d 1294 (M.D. Ala. 2017) (discussing the issue of

substance-abuse disorders in further detail). Such an evaluation is necessary to aid the court in fashioning an appropriate sentence, by helping to determine (1) how a defendant's mental disease or defect may mitigate his or her *culpability* for the offense conduct; and (2) what type of *treatment*, if any, the defendant should receive during supervised release.[2] The mental-health recommendation should, therefore, focus on these dual, overlapping issues of culpability and treatment: the role, if any, defendant's mental illness played in his or her charged conduct, and what treatment is recommended for defendant's illness in light of his or her individual characteristics and history.

Here there is strong reason to believe that Griffin's severe addiction to methamphetamine (and possibly other substances), and potentially other underlying or co-occurring mental disorders,

---

2. By "culpability" the court does not mean whether a defendant had a defense such as insanity, or whether a defendant's action was not "voluntary" or committed with the requisite mens rea; rather, the court means "culpability" in the sense of possible mitigation.

contributed to the violations in the amended petition. Since beginning his term of supervised release in August 2016, Griffin has consistently failed to abide by the conditions of supervision. Outpatient drug treatment, as well as residential treatment at no fewer than four different facilities, has failed to prevent Griffin from using illegal drugs. During October-November 2017, Griffin struggled to remain sober for even a four-day period to allow him to be placed in residential treatment, delaying his placement on multiple occasions. Further troubling is Griffin's apparent inability to accept that he has a serious drug addiction, including his testimony at the revocation hearing that he could simply stop using drugs "if I want to."

Indeed, as early as 2011, in the presentence investigation report ("PSR") for Griffin's underlying conviction, there were multiple suggestions that he may be suffering from undiagnosed mental illness, including but not limited to substance-abuse disorder(s), and

4

that this mental illness may have contributed to his criminal conduct. At that time, Griffin, whose criminal history consisted primarily of various theft offenses, described daily use of methadone (his previous drug of choice), and his "often stealing to support his habit." Presentence Investigation Report, *United States v. John Steven Griffin*, No. 3:11-cr-32 (M.D. Fla) at 15. In addition, Griffin's mother indicated to the Probation Office that she suspected he has undiagnosed mental-health problems, which cause noticeable behavioral changes and "flare up" when he is not taking illicit drugs. The 2011 PSR therefore further supports the court's belief that Griffin's criminal conduct may be traceable in part to his substance-abuse disorder and other, as-yet undiagnosed mental illness.

While Griffin's mental health was evaluated locally ahead of the revocation hearing in November 2017, he has never received an in-patient, longitudinal assessment. Finally, according to the parties, the

5

need to transfer him to an in-patient setting is apparent because of his recurrent violations and alleged violations since beginning supervised release: failure to identify and treat the mental issues that underlie his inability to comply with the conditions of his supervised release will undeniably result in more revocations, and, as a result, more time in custody.

18 U.S.C. § 3552(b) authorizes the court to order that the study be done by the BOP upon the finding of a "compelling reason" or where there are no adequate professional resources available in the local community to perform the study. In this case, the court seeks, with the agreement of the parties, a comprehensive, longitudinal evaluation of Griffin's mental health, including whether he suffers from substance-abuse disorder and any co-occurring mental disorders, and the development of specialized treatment plan that will help to ensure that he does not continue to violate the law. It is undisputed that there are no locally available resources that could provide such an

evaluation.  Because there are no adequate professional resources available in the local community, the court need not reach the issue of whether there is a "compelling reason" for the inpatient study.

Also, because Griffin does not oppose being transported, and committed, to a BOP facility for the mental-health evaluation, no due-process concerns are raised.  *See Mosley*, 277 F. Supp. 3d at 1300.

\*\*\*

Griffin may face punishment for his non-compliance with the terms of his supervised release, and there is reason to believe that non-compliance was driven by the mental disorder that is his drug addiction.  In order to ensure that he is not inappropriately punished for having a disease, to assess accurately his culpability for the offense, and to mete out any necessary rehabilitative treatment, it is ORDERED as follows:

(1) Pursuant to the provisions of 18 U.S.C. § 3552(b), the United States Marshal for this district shall immediately remove defendant John Steven Griffin

to the custody of the warden of an appropriate institution as may be designated by the Attorney General, where he is to be committed for the purpose of being observed, examined, and treated by one or more qualified psychiatrists or psychologists at the institution. The statutory time period for the examination shall commence on the day defendant Griffin arrives at the designated institution. The examination shall be conducted in the suitable facility closest to the court, unless impracticable.

(2) Pursuant to 18 U.S.C. § 3552(b), the examining psychiatrists or psychologists shall evaluate defendant Griffin's psychological condition for the purposes of sentencing and shall include their findings in a report to be presented to this court.

(a) To assist the court in assessing defendant Griffin's culpability--that is, as a mitigating factor--the study shall discuss his mental-health history and characteristics, and shall particularly address (i) whether he suffers from a substance-abuse

8

disorder, any other mental disorder(s) and if so, which one(s); (ii) if he has a substance-abuse disorder as well as another mental disorder or disorders, how, if at all, the other mental disorder(s) relate to or interact with his substance-abuse disorder, including whether the other mental disorder(s) may be viewed as having caused, led to, or contributed to his substance-abuse disorder; (iii); what role, if any, his substance-abuse disorder and/or other mental disorder(s) played in his commission of the offenses for which he now faces sentencing; and (iv) how his substance-abuse disorder and/or other mental disorder(s) impact his ability to refrain from using illegal substances and to meet other conditions of supervision, such as attending scheduled meetings with Probation.

(b) In addition to assessing whether defendant Griffin suffers from a substance-abuse disorder or any other mental disorder(s), the study shall provide recommendations for treatment to be provided to him

9

while on supervised release. The study should address, in light of his failure to refrain from reverting to the use of drugs and his other violations of the conditions of supervision, his personal characteristics, history, and circumstances; his mental health; which treatment modalities, treatment settings, and supportive or other services are likely to be most effective in helping him to refrain from using illicit drugs or violating other conditions of supervised release and to learn to respond to life stressors without resorting to illegal activities, particularly given that other treatment has not worked; and whether, assuming sincere and good faith efforts on the part of Griffin, relapse is to be reasonably expected. Among other issues, the study shall address whether there is any medication that can be used in conjunction with any other treatment to address his substance-abuse disorder and any other disorder(s); whether family involvement in his recovery would be helpful, and if so, whether there are particular groups or services that his family

could use to assist him in treatment; and what, if anything, can be done to break his cycle of drug use and violations of supervised release, apart from incarceration.

(3) Finally, the study shall discuss any other matters the Bureau of Prisons believes are pertinent to the sentencing factors set forth in 18 U.S.C. § 3553(a).

DONE, this the 14th day of March, 2018.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**